IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**DON BARRY and MICHELLE BARRY**                                                        **PLAINTIFFS**

V.                               **CASE NO. 5:20-CV-05131**

**STATE FARM FIRE & CASUALTY COMPANY**                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant State Farm Fire & Casualty Company's ("State Farm") Motion for Summary Judgment (Doc. 22), Brief in Support (Doc. 23) and Statement of Facts (Doc. 24). Plaintiffs Don and Michelle Barry filed a Response in Opposition to the Motion (Doc. 25), Brief in Opposition (Doc. 26), and Statement of Facts (Doc. 27). State Farm then filed a Reply (Doc. 29). For the reasons explained below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

### I.  BACKGROUND

Plaintiffs Don and Michelle Barry own a home located at 19852 Groth Road in Springdale, Arkansas. Mrs. Barry originally purchased the home in 2013 before she was married. At the time of purchase, she secured a homeowners insurance policy from Defendant State Farm. *See* Doc. 22-7 ("the Policy"). Mrs. Barry, who is a licensed civil engineer and associate professor of civil engineering at the University of Arkansas, admitted in her deposition that she did not hire a third party to inspect the property and instead inspected it herself. (Doc. 22-1, p. 10). Her father, who works in the construction business, inspected the property with her. *Id.* The sellers of the home had represented to Mrs. Barry that the cedar shake roof had been entirely replaced the previous year, in

1

2012, due to a leak.  *Id.* at p. 11.   Mrs. Barry and her father did not notice anything wrong with the roof when they inspected it except some discoloration on the trusses.  *Id.*

Mrs. Barry completed the purchase of the house on August 31, 2013.  A few days later on September 3, she received an email from State Farm agent Janey DeVries, which stated that she "had to make an adjustment on [Mrs. Barry's] home policy this morning after getting a copy of the roof report."  (Doc. 22-2, p. 1).  Ms. DeVries went on to explain in the email that she "had to change the type [of roof] to wood shake" and that this would result in a monthly premium increase of $110.00.  *Id.*  The Barrys and State Farm agree that the "roof report" referenced in Ms. DeVries's email never existed or no longer exists.  Both sides make assumptions about the "roof report."  The Barrys suspect the report was written by an employee or contractor of State Farm who inspected the roof and opined in writing as to its condition and insurability.  State Farm suspects that the "roof report" was not a written report that a certified roof inspector would prepare; instead, State Farm guesses that Ms. DeVries meant in her email that someone reported to her that the roof was composed of cedar shake, which had not previously been known and which cost more to insure.

After Mrs. Barry bought the house, she lived in it with her then-fiance, Don Barry, for several years until they got married in 2017.  They paid monthly premiums without fail and never had problems with the roof until March of 2018.  At that time, the Barrys discovered water damage inside the home near a dormer window in the loft bedroom. Shortly after that, they discovered more water damage in the living room on the south side of the house.  Mrs. Barry testified that Mr. Barry contacted State Farm about the water damage about a week after they first noticed it.  (Doc. 22-1, p. 22).  State Farm

investigated the claim, and on April 24, 2018, sent the Barrys a letter denying their request for repairs in full.  The letter stated in relevant part:

> Our inspection on April 24, 2018, revealed that the insured property has sustained damages not covered by your policy.  As I discussed with Mr. Barry at the inspection, there was no wind or hail damage observed to the wood shakes on your roof.  The interior damages are a result to [sic] multiple scattered roof leaks that has [sic] been ongoing for an extended period of time, which is not a covered loss under your homeowners policy.

(Doc. 22-4, p. 4).  The letter went on to quote from the Barrys' Policy, which provided in Section I, "Losses Not Insured," that the company would not cover a loss due to "neglect" or a loss "consisting of . . . [a] defect, weakness, inadequacy, fault or unsoundness in . . . workmanship, construction . . . materials used in construction or repair; or maintenance of any property . . . ."  *Id.* at pp. 4–6 (hereinafter, the "construction-defect exclusion," Doc. 22-7, pp. 24–25).  In sum, State Farm had determined that damage inside the home and on the roof was not covered under the Policy because the roof was defectively installed.

By September 20, 2018, State Farm had reconsidered its position on paying the claim.  The Barrys received a letter that informed them that the company would pay "for the new water damage to [the] wood ceiling" inside the home.  (Doc. 22-4, p. 1).[1]  However, State Farm still refused to pay to replace the roof or any portion of it.

The Barrys filed suit against State Farm in the Circuit Court of Washington County, Arkansas, on July 9, 2020, alleging breach of contract and the tort of bad faith.  (Doc. 1-1). State Farm timely removed the action to this Court on July 29, 2020.  On October 14, 2020, the Barrys filed an Amended Complaint (Doc. 15), which contained the same

---

[1] It appears State Farm concluded that it was obliged to pay for interior water damage pursuant to the provision in the Policy that covered losses "resulting . . . from" construction defects.  *See* Doc. 22-7, p. 25; Doc. 23, p. 4.

3

material facts and causes of action as the original complaint.[2] The Barrys contend that State Farm is liable to them for the replacement value of their roof, together with all reasonable attorney's fees, a 12% penalty under Arkansas Code § 23-79-208, and punitive damages for bad faith.

State Farm's Motion for Summary Judgment argues that the Policy's construction-defect exclusion is valid and enforceable and was never waived by the company. Moreover, State Farm points out that there is no genuine, material dispute of fact that the exclusion applies here, as both sides' experts agree that the roof had various workmanship defects. According to State Farm, the only possible reason why the Barrys' roof sustained damage was because of defective construction. In response, the Barrys contend that State Farm waived the construction-defect exclusion in the Policy when the company performed a roof inspection around the time the home was purchased. The Barrys believe that State Farm must have agreed to insure the roof "as-is" following the inspection. In the alternative, they argue that if State Farm did not waive the construction-defect exclusion, there is still a genuine, material dispute of fact as to what caused their roof to sustain damage. The Barrys maintain that even if the roof was not properly installed, it could also be true that a storm caused roof damage. Their expert agrees. *See* Doc. 22-8, p. 2 (report of roofing expert Brad Garnett, opining that there is evidence of "storm damage to the back slope [of the roof], ridge, guttering downspouts, and gutter screening"). Because the storm damage cannot be repaired, the Barrys' argument is that the roof must be replaced pursuant to the provision in the Policy that provides coverage

---

[2] The original complaint named State Farm Mutual Automobile Insurance Company as a second defendant, but the Amended Complaint eliminated that party and any claims that had previously been asserted against it.

for "accidental direct physical loss to the property." (Doc. 22-7, p. 21). State Farm disagrees and relies on its own expert, who opines that any damage observed on the roof was "due to normal weathering" and was "not caused by a severe storm event." (Doc. 22-5, p. 4, expert report of engineer Aaron D. Probst).

Given the obvious dispute between the experts over whether the roof sustained storm damage, State Farm is hard-pressed to convince the Court that the breach-of-contract claim is suitable for summary judgment. To get around the problem, State Farm argues that the Barrys are now estopped from arguing that their roof should be replaced due to storm damage because they "did not make a claim for storm damage when they reported the roof leak in 2018" and "did not allege storm damage when they filed their Complaint . . . . [or] when they amended their Complaint . . . ." (Doc. 23, p. 6). In the alternative, State Farm argues that if a claim for storm damage "was properly brought, Plaintiffs cannot prove [such a claim] as they cannot tie the very minimal damage claimed to any specific storm or timeframe." *Id.* at p. 7. State Farm also moves for summary judgment on the Barrys' cause of action for bad faith due to a lack of evidence that State Farm acted dishonestly, maliciously, or with a spirit of ill.

Below, the Court will first address the appropriate legal standard to be considered when evaluating a motion for summary judgment. Next, the Court will analyze the Barrys' breach-of-contract claim, including their waiver argument and State Farm's estoppel argument. Finally, the Court will address the merits of the Barrys' bad-faith claim.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

5

fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, in order for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III.  DISCUSSION

#### A.  Breach of Contract

State Farm refuses to replace the Barrys' roof pursuant to the construction-defect exclusion of the Policy. The Barrys' first argument is that State Farm waived this exclusion. The only evidence they cite in support of this alleged waiver is an email that a

State Farm employee sent to Mrs. Barry advising her that the monthly premium for the roof would be raised pursuant to a "roof report." (Doc. 22-2, p. 1). The Barrys infer from this email that State Farm must have conducted a full inspection of their roof, prepared a written report, and then agreed to insure the roof "as-is." They have no way to prove that their inference is correct. Further, the Policy contains an express waiver provision that states: "A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights." (Doc. 22-7, p. 33). The Court finds that the Policy's waiver provision is unambiguous and that Ms. DeVries's email, with its vague reference to a "roof report," is insufficient as a matter of law to constitute a valid, written waiver of the construction-defect exclusion.[3]

The Barrys' next argument is that summary judgment should be denied because there is a dispute of fact about whether the roof was properly installed. *See* Doc. 26, p. 1. Once again, they provide no evidence to demonstrate that there is a dispute of fact, and the evidence supplied by State Farm establishes that there is no dispute at all. The Barrys' own expert, Mr. Garnett, submitted a report that observed, "This roof system was not installed correctly." (Doc. 22-8, p. 1). He went on to elaborate that the "spacing between the shake shingles . . . . left the felt paper exposed, causing deterioration, exposing nails, and ultimately causing leaks in the home." (Doc. 22-8, p. 1). Further, in

---

[3] The Barrys also argue in their Brief that the construction-defect exclusion is somehow unconscionable. In particular, they claim—without any citation to law—that "it is unconscionable for State Farm to now say that the roof was improperly installed and to deny the claim, after they insured the roof as-is, inspected the roof or had every opportunity to inspect the roof, and accepted Plaintiffs' premium payments for years." (Doc. 26, pp. 1–2). "The burden of proving unconscionability is upon the party asserting the defense." *GGNSC Holdings, LLC v. Lamb*, 487 S.W.3d 348, 357 (Ark. 2016). Here, the Barrys fail to meet their burden of proving that the exclusion at issue is unconscionable. Saying something is unconscionable does not make it so.

7

his deposition testimony, Mr. Garnett agreed that State Farm did not owe the Barrys for any damage caused by improper installation of the roof. *See* Doc. 22-6, p. 19. With all that said, however, the fact that the roof was improperly constructed does not end the analysis on the breach-of-contract claim. There appears to be a dispute as to whether the roof was damaged by a storm or storms and should be replaced, in whole or in part, under the "accidental direct physical loss" provision of the Policy.

Mr. Garnett opines that the back slope and ridge of the roof, the downspouts, and the gutter screening suffered some degree of damage as a result of storm conditions. *See* Doc. 22-6, p. 19. There is therefore a genuine, material dispute of fact about whether a storm or storms damaged the roof. If such damage occurred, then there are also material disputes about when the storm happened and the nature and extent of the damage it caused. State Farm attempts to sidestep these disputes by arguing that is too late for the Barrys to claim storm damage because "during the claim process[, they] focused on the installation of the roof." (Doc. 23, p. 13). There are no documents in the summary judgment record to establish what the Barrys "focused on" when making their claim. Further, Mrs. Barry testified that storm damage was, in fact, one of the factors the parties acknowledged early on during the coverage dispute. She explained that she and her husband "made a claim for [State Farm] to come out and tell [them] what was the issue [with the roof]," and that at that time, the Barrys "didn't know if wind was causing the problems, hail, whatever." (Doc. 22-1, p. 27). Instead, they claim that they put State Farm on notice that the roof was damaged and then relied on the company to discover the cause or causes for the damage. *Id.* The Court is not persuaded that any legal reason bars the Barrys from arguing at trial that State Farm breached the Policy by refusing to

8

repair or replace storm damage to the roof. Accordingly, summary judgment on the breach-of-contract claim is **DENIED**.

### B. Bad Faith

State Farm also moves for dismissal of the Barrys' bad-faith claim, arguing there is no evidence of record that would support such a claim. There are no facts in the Amended Complaint that would support a claim for bad faith except the decision by State Farm to deny coverage. *See* Doc. 15. The Barry's summary judgment Brief only states that the "ultimate denial of the claim . . . is unconscionable and in bad faith." (Doc. 25, p. 2).[4] It is black letter law that bad faith "does not arise from a mere denial of a claim; there must be affirmative misconduct." *Selmon v. Metro. Life Ins. Co.*, 277 S.W.3d 196, 202 (Ark. 2008) (internal citation omitted). The tort requires evidence of "a state of mind characterized by hatred, ill will, or a spirit of revenge." *Unum Life Ins. Co. of Am. v. Edwards*, 210 S.W.3d 84, 87 (Ark. 2005) (quotation and citation omitted). As the Barrys have no evidence of bad faith, summary judgment is **GRANTED** to State Farm on this claim.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant State Farm Fire & Casualty Company's Motion for Summary Judgment (Doc. 22) is **GRANTED IN PART AND DENIED IN PART**. The bad-faith claim is dismissed with prejudice, and the breach-of-contract claim remains for trial.

---

[4] To the extent the Barrys' waiver argument is meant to support their bad-faith claim, the Court has already found that argument to be without merit. *See supra*, Section III.A. at pp. 6–7.

**IT IS SO ORDERED** on this 14th day of June, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE